AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>a black Alcatel Onetouch cell phone with a<br>cracked/broken back cover, Model 1018B, and MEID<br>number 270113185014530350 | )<br>)<br>)<br>)<br>)<br>)    Case No. 17- **MJ-124** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

located in the _____Middle_____ District of _____Louisiana_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | Conspiracy to commit bank fraud |
| 18 U.S.C. § 1029(a)(3) | Possession of unauthorized access devices |

The application is based on these facts:

See Attached Affidavit

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Josh Wilburn, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____11/01/2017_____

_____
*Judge's signature*

City and state: __Baton Rouge, Louisiana__

Richard L. Bourgeois, Jr., U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Joshua Wilburn, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal
Rules of Criminal Procedure for search warrants authorizing the examination of property which
is currently in law enforcement possession ("Attachment A"), and the extraction from that
property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation and have been
since May 2016.  I am currently assigned to the FBI Baton Rouge Resident Agency ("BRRA").
Prior to joining the FBI, Affiant was a Public Safety Intelligence Analyst for the Ohio State
Highway Patrol where his duties included analyzing telephone records and multiple law
enforcement databases in support of investigations.  Prior to that, Affiant spent approximately 8
years in the United States Navy and as a defense contractor for the National Security Agency
conducting tactical signals intelligence operations in support of special operations forces.

3.      As a Special Agent of the FBI, I have conducted numerous investigations related
to white-collar crime, healthcare fraud, and public corruption.  Through my training, education,
and experience, I have become familiar with the manner in which bank fraud and identity thefts
are committed.  In addition, I have conducted investigations of various forms of criminal activity
where the participants of said criminal activity assisted their planning and communication to
further the criminal venture through the use of various electronic devices, including cellular
telephones and computers.

4.      The Felony Lane Gang is a loosely affiliated organization primarily based in
southern Florida.  Participants generally travel as a group outside of Florida for the purposes of

committing burglary and bank fraud.  This particular cell has been active in Louisiana since approximately July 2016 and is alleged to have committed numerous vehicle burglaries and bank frauds.  When committing vehicle burglaries, they target females at locations in which the victim is likely to leave their purse in their vehicle, such as gyms and dog parks.  After stealing the purse, the males in the group will recruit females who are often prostitutes or drug addicts to impersonate the victim by wearing wigs or other disguises.  They will then withdraw funds from banks by cashing forged check while impersonating the victim using stolen drivers licenses, bankcards, and social security cards.  These subjects have also been known to write checks from one victim account and cash them under the identity of another victim to attempt to evade detection.  As of this writing, identification cards, bankcards, check books, and other access devices for approximately 193 victims have been recovered during this investigation.  Items linked to burglaries in the Middle, Eastern, and Western Districts of Louisiana as well as other states have been recovered.

5.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

6.      The property at issue in this case is:

      a.      Apple iPhone (silver/grey and black with black case), Model A1533 with International Mobile Equipment Identity number 013880008864472, hereinafter Device #1;

      b.      LG cell phone with Tracfone logo (black, missing back cover), Model LG328BG, with International Mobile Equipment Identifier number 354417073676205, hereinafter Device #2;

     c.      Alcatel Onetouch cell phone (black, cracked/broken back cover), Model 1018B, with Mobile Equipment Identifier 270113185014530350, hereinafter Device #3;

     d.      The Devices are currently in the possession of, and located at, the Federal Bureau of Investigation Baton Rouge Resident Agency.

7.     The applied-for warrant would authorize the forensic examination of the Device listed in Attachment A for the purpose of identifying electronically stored data particularly described in Attachment B.

### PROBABLE CAUSE

8.     I make this affidavit in support of an application for a search warrant authorizing the search of the Devices that were lawfully seized by the Baton Rouge Police Department on November 17, 2016.  The phones were obtained via a Consent to Search form signed by the rental car company owning the vehicle rented to Johnny Jones.  As set forth below, Johnny Jones and Allen Clark were charged with various state criminal violations.

**I.**     **Phones are seized from a vehicle linked to burglaries committed by Johnny Jones, Allen Clark, and Geoffrey Green.**

9.     On November 16, 2016, East Baton Rouge Sheriff's Office patrol units responded to Southern Oaks Athletic Club located at 15253 Shenandoah Ave. in response to two complaints of vehicle burglaries.  A witness reported that a black four-door vehicle was parked next to one of the vehicles that was broken into.  In both vehicle burglaries, the victim's car windows were smashed out and the victims' purses were stolen from their vehicles.  A victim then informed Deputies someone attempted to use her stolen credit card at Discount Zone Gas on Jefferson Highway in Baton Rouge.

3

10.      Deputies reviewed the security tapes at the gas station and identified a black Nissan Altima with New Jersey Plate J24FNX as the car belonging to the men using the credit card.  The car had been rented by the sister of Johnny Jones ("Jones").  On November 17, 2016, Deputies located the black Altima rented by Jones' sister at the Motel 6 on 10445 Reiger Road.  The motel informed Deputies that the car was linked to room 123, which was rented by Jones.  Jones is a known member of the Felony Lane Gang.

11.      Deputies proceeded to the room where they encountered and arrested Jones and Allen Clark ("Clark").  Deputies noticed broken window glass on the back seat of the Altima rented by Jones sister, and obtained written consent to search the Altima from the rental company.  During the arrests and investigation at the motel, 5 phones were recovered.  Two of them belong to Jones and were on his person during the arrest.  Three phones were found in the Altima.  Based on the information provided by Jones during his proffer session, the other three phones are believed to belong to Clark and Green.

12.      Following the arrest of Jones and Clark, Deputies monitored the prison phone calls of both men.  On November 20, 2016, Deputies reviewed the phone calls of Clark and heard him describe the location of "the stuff."  Clark told a female that he had placed items in the laundry room, behind the washing machine in a sock.  Deputies proceeded to the Motel 6, obtained a consent to search from the desk clerk and located the item described by Clark.  The sock contained multiple check books, drivers' licenses, bank cards, and social security cards. The stolen items were linked to multiple vehicle burglaries in Baton Rouge and Lafayette, Louisiana.  These are the types of items used by members of the Felony Lane Gang to commit bank frauds.

4

13.     On August 25, 2017, Jones signed a consent form permitting a search of his cell phones during a proffer session.  I acquired the phones from state custody and provided them to the FBI forensic examiner.  On October 23, 2017, I received a report from the FBI Computer Analysis Response Team ("CART") regarding the contents of Jones' phones.  The report contains numerous pertinent text messages from both known and unknown co-conspirators, contacts, and other relevant information to the investigation as described in part below.

14.     During his proffer session, Jones admitted to committing vehicle burglaries in Baton Rouge and Lafayette in the days prior to his arrest.  Additionally, he admitted that Clark had met up with him in Lafayette while he was there to commit Felony Lane Gang burglaries. Jones stated that he used his cell phone to communicate with Clark, Geoffrey Green, and with higher-level members of the group in order to plan meet ups to distribute the "pieces" that they had stolen from vehicles.  "Pieces" refers to the stolen access devices such as checks, drivers' licenses, and social security cards acquired during the burglaries.  Jones stated that pieces are sometimes traded or sold for cash.  A review of the contents of Jones' phones discovered communications and other evidence that corroborates his statements.  Jones also identified Geoffrey Green, a.k.a. "Deep" ("Green"), as the person who recruited him into the Felony Lane Gang cell and the person who instructed Jones on where to conduct vehicle burglaries.  Jones phone reflects numerous texts from Green with locations that correspond to police reports of vehicle burglaries.  Green's current location is unknown.

15.     Jones said that Clark is also known as "Pooh Bear" during his proffer session. Jones' phone contains two contact entries with phone numbers for "Pooh Bear" and "Pooh Bear1."

5

16.     On November 15, 2016, Jones receives a text message from "Pooh Bear" containing the address 200 Hugh Wallis Road, Lafayette, Louisiana.  Open source research shows this address to be a hotel in Lafayette.  This information is consistent with Jones' statement that he met up with Clark in Lafayette.

17.     Jones sent a text to 954-858-6486 on November 17, 2016, in which he is attempting to contact an unknown person .The full message reads: "Dis pooh Bear home boy, we ready dirty!! We trying to have a 10k day wit ya dirty. Hit me wen you rise!!!"  Through my experience and knowledge of the case, this is indicative that Clark has contacts that are willing to buy "pieces" of whom Jones would not otherwise have knowledge.  Jones is telling this unidentified individual that he is trying to make $10,000 that day.  Additionally, it indicates that Jones and Clark were selling "pieces" to other members of the conspiracy, which is consistent with Jones' statements during his proffer session and was confirmed during his post-plea debrief.

18.     Jones plead guilty to a Bill of Information containing two counts of 18 U.S.C. § 1029(a)(3) (possession of unauthorized access devices) and one count of 18 U.S.C. § 371 (conspiracy to commit bank fraud) on October 26, 2017.

II.     **Clark has a lengthy criminal history relating to Felony Lane Gang activity.**

19.     Clark has prior arrests in Florida, New Hampshire, Pennsylvania, and Louisiana that include the following: Carrying a concealed weapon (2005), Burglary (2009, 2011, 2012, 2013), Grand Theft (2009, 2011, 2013), Prowling (2010, 2011), Dealing in Stolen Property (2009, 2011), Larceny (2012), Forgery (2016), Receiving Stolen Property (2016), Identity Theft (2016), Theft from a Motor Vehicle (2016), Simple Burglary (2017), Theft (2017), and Unauthorized Use of Access Card (2017).

**III.     There is probable cause to believe that the seized phones contain evidence of federal law violations related to conspiracy to possess unauthorized access devices and bank fraud.**

20.     Based on my training and experience, and my knowledge of the facts of this case, there is probable cause to believe the seized phones contain evidence of violations of federal law, including violations of 18 U.S.C. § 1029(a)(3) (possession of unauthorized access devices) and 18 U.S.C. § 371 (conspiracy to commit bank fraud).  Based on my investigation of this case, interviews of members of the Felony Lane Gang, and review of phone records, members of the Felony Lane Gang use cell phones to communicate regarding locations to commit burglaries, locations of banks to defraud, locations to meet up, and to plan future crimes.  Phones are used to coordinate burglary locations, locations to meet to exchange stolen access devices, locations to commit bank frauds, and to communicate regarding police activity.  Additionally, members of the Felony Lane Gang use Snapchat and other applications to communicate in a manner designed to avoid detection.

21.     Jones' phone shows approximately 40 addresses sent to him via text message, of which many correlate to known burglary locations on the same dates.  Numerous other addresses correlate to banks located in the same areas where burglaries occurred.  Consensual searches of other phones in this case show cell phones being used to coordinate locations that bank fraud is to be committed as well as instructions on how to commit the bank fraud.

22.     Consensually searched phones from other cooperators in the investigation have provided photos of stolen identification cards being sent via text message and social media platforms between members.  Based on my knowledge of this case, these photos are sent so that burglars possessing the cards can let those responsible for recruiting females know the general race, age, and physical description of the females they should be seeking to recruit.

7

23.     Interviews of known conspirators in this case reveal that a large portion of coordination of Felony Lane Gang activity is conducted through phone calls and text messages. This allows conspirators to conduct burglaries and bank fraud without having to be in the same location, therefore, providing a layer of security for those involved.  Additionally it gives an element of deniability in the event that one or more members are caught.

24.     Based on my knowledge of this case, and my training and experience, there is probable cause to believe the various Devices listed in paragraph 6a-c of this Affidavit will contain, among others, the following: incriminating text messages regarding the location of places in which burglaries occurred, text messages regarding the plans of the conspirators, GPS data linking the phone to burglaries, and photos of stolen identification.  Such evidence will allow law enforcement to examine the scope of the subjects' criminal activities and identify coconspirators, among other things.

25.     The Devices are currently in the lawful possession of the Federal Bureau of Investigation at the Baton Rouge Resident Agency.  In my training and experience, I know that the Devices have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the FBI.

## TECHNICAL TERMS

26.     Based on my training and experience, I use the following technical terms to convey the following meanings:

      a.     Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals

through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.   Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

9

c.   Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.   GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the

10

antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.      PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

27.     Based on my training, experience, and research, I know that some or all of the Devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the Devices and the scope of the subjects' illicit activities.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

28.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

29.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

a.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.     Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.     The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a

12

dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

30.     *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

31.     *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

32.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

13

## REQUEST FOR SEALING

33.     It is respectfully requested that this Court issue an order sealing, for at least ninety

(90) days, all papers submitted in support of this application, including the application and search

warrant.  I believe that sealing this document is necessary because the warrant is relevant to an

ongoing investigation into a possible criminal organization, and not all of the targets of that

organization have been identified.  Based upon my training and experience, I have learned that,

criminals actively search for criminal affidavits and search warrants via the internet, and

disseminate them to other criminals as they deem appropriate, *e.g.,* they may share them with

coconspirators for purposes of a possible assassination if they believe a person is working with

law enforcement.  Consequently, premature disclosure of the contents of this affidavit and

related documents may have a significant and negative impact on the continuing investigation

and may severely jeopardize its effectiveness, and may pose a threat to law enforcement and

others.

Respectfully submitted,

Joshua Wilburn, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me at Baton Rouge, Louisiana, this ___1ST___ day of

November 2017.

RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE
MIDDLE DISTRICT OF LOUISIANA

14

## ATTACHMENT A

The property to be searched is a black Alcatel Onetouch cell phone with a cracked/broken back cover, Model number 1018B, and MEID number 270113185014530350, hereinafter "Device #3." The Device is currently in the possession of, and located at, the Federal Bureau of Investigation Baton Rouge Resident Agency.

This warrant authorizes the forensic examination of Device #3 for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.       All records on Device #3 described in Attachment A, that relate to violations of

18 U.S.C. §§ 371 (conspiracy to commit bank fraud), and 1029(a)(3) (possession of unauthorized

access devices), and that involve JOHNNY JONES, ALLEN CLARK, and GEOFFREY

GREEN, or any co-conspirators, from the date the Devices were activated, including:

   a.   lists of co-conspirators and related identifying information;

   b.   locations of burglaries, bank frauds, and other crimes related to activity by the
        conspirators;

   c.   any information related to sources of stolen access devices or brokers of stolen
        access devices;

   d.   the location of caches of stolen access devices;

   e.   communications among members of the conspiracy;

   f.   social media account identification of members of the conspiracy;

   g.   photos of members of the conspiracy, photos of items stolen during the
        conspiracy, and photos of locations where crimes were committed by the
        conspiracy;

   h.   any information regarding the phone user's schedule or travel; and

   i.   all bank records, checks, credit card bills, account information, and other financial
        records.

2.       Evidence of user attribution showing who used or owned the Devices at the time

the things described in this warrant were created, edited, or deleted, such as logs, phonebooks,

saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana



| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>a black Alcatel Onetouch cell phone with a<br>cracked/broken back cover, Model 1018B, and MEID<br>number 270113185014530350 | )<br>)<br>)<br>)<br>)<br>) | Case No.   17-MJ-124 |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Middle_____ District of _____Louisiana_____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment "B"

**YOU ARE COMMANDED** to execute this warrant on or before   November 14, 2017   *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Richard L. Bourgeois, Jr._____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   11/1/17 at 12:40pm              
                                                                      *Judge's signature*

City and state:     Baton Rouge, Louisiana              Richard L. Bourgeois, Jr., U.S. Magistrate Judge
                                                                      *Printed name and title*

## **ATTACHMENT A**

The property to be searched is a black Alcatel Onetouch cell phone with a cracked/broken back cover, Model number 1018B, and MEID number 270113185014530350, hereinafter "Device #3." The Device is currently in the possession of, and located at, the Federal Bureau of Investigation Baton Rouge Resident Agency.

This warrant authorizes the forensic examination of Device #3 for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on Device #3 described in Attachment A, that relate to violations of 18 U.S.C. §§ 371 (conspiracy to commit bank fraud), and 1029(a)(3) (possession of unauthorized access devices), and that involve JOHNNY JONES, ALLEN CLARK, and GEOFFREY GREEN, or any co-conspirators, from the date the Devices were activated, including:

      a.   lists of co-conspirators and related identifying information;

      b.   locations of burglaries, bank frauds, and other crimes related to activity by the conspirators;

      c.   any information related to sources of stolen access devices or brokers of stolen access devices;

      d.   the location of caches of stolen access devices;

      e.   communications among members of the conspiracy;

      f.   social media account identification of members of the conspiracy;

      g.   photos of members of the conspiracy, photos of items stolen during the conspiracy, and photos of locations where crimes were committed by the conspiracy;

      h.   any information regarding the phone user's schedule or travel; and

      i.   all bank records, checks, credit card bills, account information, and other financial records.

2.      Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.